## TURNIPSEED v. McMATH.

1. A release obtained by fraud is void.
2. M was living separate from his wife, who had gone to her father's, and M had commenced a suit to recover from T, the father, certain slaves which he had received upon the marriage. Whilst this suit was in progress, the father stated to one H, that if M would dismiss his suit, and execute a release, he would put him on a place, let him have his family, and the use of the slaves, and if he would do right, at the end of five years, he would

have regained his confidence. H did not know M at this time, and was not requested to communicate this to him, by T, but in a few days sought him out, and told him what T had said. Soon afterwards he visited T, and proposed to inform him what M had said. T inquired, if witness was sent by M, and being informed he was not, said it was well—that he should not receive propositions from M, but through men of his own age, and named Roper, and others, as proper persons. Roper then, at the instance of M, visited T, to endeavor to bring about a reconciliation, but T declined to receive any proposition, or to grant an interview to M, until he had executed a release, and recognized the slaves to be his. This being communicated to M, he executed the release, and dismissed the suit; the parties met, and the release was delivered. M and T had a private interview, at the end of which, T remarked aloud, that M had satisfied him, and he took back every thing he had said against him, adding, there were some things his family required explanation of, or Mrs. T. could not be reconciled. M, and his wife, have not lived together since, but the breach between the parties has widened; and there was no proof that T had made any efforts to bring about a reconciliation, or to do any of the acts he had proposed to H to do, if a release was executed by M. Held, that this testimony was relevant, and proper to go to the jury, as evidence of the inducements held out by T, to M, to execute the release, and of the fact, that he knew they had been communicated to M, and had produced on the mind of M, the impression, that if he executed the release, his family would be restored to him.

Error to Pickens Circuit Court. Before Hon. G. W. Stone.

THE plaintiff below, brought trover against the defendant, in the circuit court of Pickens county. The writ was issued in April, 1845.

The defence relied on, was a release, executed by the plaintiff to the defendant, bearing date December, 1844, which is under the seal of the plaintiff, and is as follows: "Know all men by these presents, that I, Joseph W. Mc-Math, do hereby quit, and release, all my right, title, and claim, to certain negro slaves, for which I have instituted a suit of trover, by writ from the circuit court of Pickens county, on the second day of October, 1844. The names of said slaves, are mentioned on the cause of action indorsed on said writ—Clarissa, Mary and Nelson—now in the possession of said Turnipseed. Also I release all my claim to all, or any other property, and money, I may have, in virtue of my marriage with the daughter of said Turnipseed, and I also agree,

not further to prosecute my aforesaid action of trover. Given under my hand, and seal, this the 12th December, 1844." It was shown that the plaintiff had married the daughter of the defendant, and on his marriage, had received the negroes from the defendant, the father. That the plaintiff and his wife had separated, that she had returned to her father, and was living with him. That the negroes were in the possession of the defendant, at the time the release was executed to him. With the view to avoid the effect of the release, the plaintiff offered one Hatter as a witness, who stated that in the early part of December, 1844, the defendant sent for the witness, who offered his services to him, to bring about a reconciliation between the defendant, and his wife's family. That they, the witness and Turnipseed, had a conversation, during which the defendant said to witness, you are a reasonable man, and if McMath would act as liberally as you propose, we could make up our family difficulties; and then said to the witness, that if McMath would dismiss the suit he then had for the negroes, and execute a release to them, that he would put him on a place, let him have his family, and the use of the slaves, and if he would do right, at the end of five years, he (McMath) would have regained the confidence of him (the defendant.) The witness stated that he did not know McMath, at this time, nor was he requested to communicate this to him. That he sought Mc-Math in a few days, and communicated to him what Turnipseed had said.

The defendant's counsel here objected to this testimony, but the court permitted the witness to proceed, and reserved the admissibility of this testimony, until the whole testimony should be brought out; to which the defendant excepted.

The witness then stated, that in a few days he visited Turnipseed, and proposed to inform him, what McMath had said. The defendant inquired of him, if he had come at the request of McMath. He (witness) replied he had not. Turnipseed said it was well, for if he had, he should invite him to leave, as he did not intend to receive propositions from the plaintiff, unless through some man of his own age, and then named Roper and others, through whom he would receive propositions.

It was then shown that an interview, in a day or two after this, took place between Roper, McMath, and Hatter the witness, which resulted in an agreement, between Roper, and McMath, that Roper should visit Turnipseed, on the business above disclosed. Hatter testified that at this interview, all the matters before spoken of were talked over. Roper said, there was conversation between them, and the subject was the reconciliation of McMath and his family. Roper then visited Turnipseed, and when he announced the object of his visit, Turnipseed replied, that he would receive no proposition, nor grant an interview to McMath, until he (McMath) had dismissed the suit pending against him, and recognized the slaves to be his. Roper communicated this determination to McMath. McMath then dismissed the suit, and executed the release. McMath and Turnipseed then met, and the release was delivered. They had a private interview at the residence of the defendant, at the end of which the defendant remarked aloud, that McMath had satisfied him, "I take back every thing I have said against him." This was in the presence of McMath, the wife of defendant, and also the wife of plaintiff. But defendant then said, there are some things my family require satisfaction, or explanation of, or Mrs. Turnipseed could not be reconciled, and the wife of McMath said nothing. The interview ended. The plaintiff and his wife have not lived together, the breach between the parties widened, and it does not appear that Turnipseed has done any thing to bring about a reconciliation between McMath and his family, or that he has attempted to perform any thing he said to Hatter he would do. The whole testimony having been brought out, the defendant's counsel then moved the court to exclude from the jury, the conversation the defendant had with Hatter, at the first interview, which the court refused. The court charged the jury, that they must look to all the evidence, and ascertain if Turnipseed had acted in good faith. That if their judgments were convinced that Turnipseed had held out false pretences to McMath, and thus had procured the release, for the purpose of getting the advantage of him, then the release thus procured by fraud, was null and void, unless the defendant had in good faith attempted to carry out the expectations

and wishes thus created.   To this charge the defendant excepted.

HUNTINGTON, for plaintiff in error, contended, that the first conversation between the witness Hatter, and the plaintiff in error, was not a part of the *res gestae*, so far as the execution of the release was concerned.   That to give it this character, three things must concur.   1. That the execution of the release was then in contemplation between McMath and Turnipseed.   2. That Turnipseed conversed with the witness as his agent to negotiate the transaction.   3. That the plaintiff in error designed, or expected, that McMath would be informed of the conversation, and make it the basis of his own action ; and he contended that these constituents were all wanting, and the testimony therefore inadmissible.   He cited Enos v. Tuttle, 3 Conn. 250 ; 1 Greenleaf Ev. 120 ; Cozens v. Stephenson, 5 S. & R. 421; Irvine v. Buckaloe, 12 Id. 35 ; Smith v. Williams, 1 Murphy, 126 ; Paysant v. Ware & Barringer, 1 Ala. 165 ; Abney v. Kingsland, 10 Ala. 355 ; Bradford v. Bush, Id. 386.

PORTER & BRODIE, contra.

DARGAN, J.—It is unnecessary to refer to authorities to show, that if a release of a right is obtained by fraud, the release is void; for fraud will vitiate all instruments, however formal, or solemn in their character.   The charge of the court, therefore, was not erroneous, if it was not given upon improper evidence ; and the only question in the case, is, does the testimony of Hatter, conduce to show fraud ; in other words, was it irrelevant, and therefore inadmissible ?

To determine on the relevancy of the testimony of Hatter, it is proper to consider of the condition of the parties, before the release was executed.   McMath had sued Turnipseed, and the suit was pending.   Turnipseed, in a conversation with witness, stated, that if McMath would dismiss his suit, and convey to him the slaves, he should have his family, the use of the negroes, and that he would put him on a place to live, &c.   This, it is true, Turnipseed did not request witness to communicate to McMath, but he did communicate it,

and in consequence of this communication, another interview took place between the witness, and the defendant Turnipseed, when Turnipseed stated, he would receive no communications from McMath, unless through a man of his own age, and named Roper, and others, through whom he would receive communications. This led to an interview between the plaintiff, Hatter, and Roper, when the conversation before alluded to between Hatter and the defendant was talked over, and Roper agreed to visit Turnipseed, with the view to a reconciliation ; but Turnipseed declined receiving any proposition from McMath, or of having an interview with him, until he had executed the release, and dismissed the suits. McMath, anxious, it seems, to have his family restored to him, and to reconcile all difficulties, dismissed the suit, and executed the release. What impression then existed on the mind of McMath, and why did he do it ? It was because he had been informed of what Turnipseed, his father-in-law, had said to Hatter and to Roper, and Turnipseed knew that the conversation he had with Hatter, had been communicated to plaintiff. The fact that Hatter visited him, and wished to communicate to him what McMath was willing to do, is eivdence at least to go to the jury, as conducive to show that Turnipseed knew, when he accepted the release, that it was executed in consequence of impressions made on the mind of McMath, by his own words, communicated, it is true, without any request of Turnipseed, but producing the same effect on the mind of McMath, as if he had requested them to be communicated. With the knowledge, therefore, of the impressions on the mind of McMath, that in consideration of the release, he (Turnipseed) would endeavor to re-unite McMath and his family, and that he would provide for them, as stated, he accepted the release. Has he endeavored in any manner to carry out the expectations of McMath, created by him, under the influence of which the release was executed ? If he has, the record does not show it ; but on the contrary, after expressing himself satisfied, he says, there are some things about which my family must be satisfied, and this is all that he has done. Under all the proof, then, we draw these conclusions : The testimony of

7

Hatter, in connection with all the proof, tends to show, that the release was executed and delivered by McMath, under the impression that Turnipseed would permit, or bring about a re-union between McMath and his family. It tends further to show, that Turnipseed knew that this impression existed on the mind of McMath, that he knew that his (Turnipseed's) words had been repeated to him, (McMath) and had produced those impressions. There is not the slightest evidence that Turnipseed ever used any effort to comply with the wishes or expectation of the plaintiff; under these circumstances, we cannot pronounce the testimony irrelevant. It is indeed but slight, yet it cannot be altogether rejected. It was proper to refer it to the jury, to be by them weighed. They could attach such weight to it as they deemed right. The court therefore did not err, in permitting the testimony of Hatter, under all the circumstances, to go to the jury, and his charge to the jury was entirely correct. The judgment is therefore affirmed.